Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

SEPTEMBER 1, 2016

WILLIAM M. McCOOL, Clerk

By _____ Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ZACHARY AUGUSTUS SMULSKI, <br><br> Defendant. | NO. CR16-239 RSL <br><br> INDICTMENT |

The Grand Jury charges that:

### COUNTS 1-3

### (Wire Fraud)

A. **Introduction**

At all materials times:

1. Soundpath Health, Inc. ("Soundpath"), was a health care benefit company located in Federal Way, Washington that administered Medicare health insurance plans.

2. ZACHARY SMULSKI was employed as the chief financial officer of Soundpath from approximately September 8, 2008 to April 25, 2012. As the chief financial officer, he owed a fiduciary duty to Soundpath.

3. Trucaris, Inc. ("Trucaris") was a Delaware corporation incorporated on April 5, 2011. Trucaris filed its registration with the Washington Secretary of State on October 5, 2011, and therein identified ZACHARY SMULSKI as its President.

4. On or about April 22, 2011, ZACHARY SMULSKI opened a business economy checking bank account at Bank of America/Merrill Lynch ("account *5204") in the name of Trucaris. ZACHARY SMULSKI identified himself on the application for the account as the chairman of Trucaris and his spouse as the chief financial officer.

5. Marquette Equipment Finance, LLC ("Marquette") was a financing company located in Midvale, Utah. Marquette provided sale-leaseback financing services to Soundpath. A sale-leaseback is a transaction in which the owner of assets sells the assets to an investor and then simultaneously leases the assets back.

6. On or about June 21, 2011, ZACHARY SMULSKI prepared a memorandum in which he recommended to Soundpath's Executive Finance Committee that Soundpath enter into a sale-leaseback agreement. ZACHARY SMULSKI represented that funds received from the sale-leaseback agreement would "be invested into restricted investment grade securities." Based, in part, on ZACHARY SMULSKI's representations, Soundpath's Board of Directors gave permission for ZACHARY SMULSKI to negotiate the sale-leaseback agreement.

B. **Essence of the Scheme and Artifice to Defraud**

7. Beginning at a time unknown, but no later than on or about September 15, 2011, and continuing until on or about April 25, 2012, at Federal Way, within the Western District of Washington, and elsewhere, ZACHARY SMULSKI knowingly devised a scheme and artifice to defraud Soundpath and Marquette by means of materially-false and fraudulent pretenses, representations, and promises, and by means of the concealment of material facts.

8. The essence of the scheme was for ZACHARY SMULSKI to fraudulently represent to Soundpath and Marquette that funds obtained from the sale-leaseback

agreement would be used on Soundpath's behalf and for Soundpath's exclusive benefit. In truth and fact, ZACHARY SMULSKI diverted over $1.8 million dollars of the money from Marquette to an account belonging to a company under his control and subsequently attempted to use approximately $631,500 of the funds to support his personal business endeavors without Soundpath's knowledge and permission.

D.  **The Manner and Means of the Scheme**

The manner and means used to accomplish the scheme to defraud included the following:

9. On or about September 15, 2011, ZACHARY SMULSKI submitted a memorandum to Soundpath's Board of Directors recommending that the Board pass a corporate resolution that authorized him to enter into the sale-leaseback agreement with Marquette. In the memorandum, ZACHARY SMULSKI represented that funds received from Marquette would "be placed in a restricted investment account at US Bank." Based, in part, on ZACHARY SMULSKI's representations, the Board passed a resolution permitting ZACHARY SMULSKI to enter into the Marquette sale-leaseback agreement.

10. Despite having informed Soundpath that the funds from the sale-leaseback agreement would be placed in a restricted investment account at U.S. Bank, the following day, on or about September 16, 2011, ZACHARY SMULSKI, purportedly in his capacity as chief investment officer of Soundpath, prepared and executed a form that authorized and directed Marquette to transfer funds under the sale-leaseback agreement to Bank of America account *5204, located in Seattle, Washington.

11. ZACHARY SMULSKI deceived Marquette into believing Bank of America account *5204 was a Soundpath account when, in fact, the account belonged to Trucaris. For example, on September 22, 2011, ZACHARY SMULSKI sent an email from his Soundpath email account to employees of Marquette regarding the account. In the email, he wrote, "I had my staff double check with the bank and the bank account is set up to accept ACHs [(e.g., Automated Clearing House transfers)]." In truth and fact,

the use of the Trucaris account to receive the funds was carried out without Soundpath's knowledge and consent.

12. After Marquette transferred money to Bank of America Account *5204 at ZACHARY SMULSKI's direction, ZACHARY SMULSKI used much of the money to cover some of Soundpath's financial obligations, but retained control of a portion of the money. On November 21, 2011, ZACHARY SMULSKI transferred $24,140.51 of the diverted funds in the Trucaris account to his spouse's business bank account.

13. In order to further divert and conceal the Marquette funds, on December 9, 2011, ZACHARY SMULSKI and his spouse opened an individual investor account with Merrill Lynch ("account *2267") under the name Trucaris. On December 26, 2011, ZACHARY SMULSKI deposited $620,000.00 of the diverted funds from the Trucaris Bank of America account into the Trucaris Merrill Lynch investment account.

14. Having diverted funds due and owing to Soundpath, ZACHARY SMULSKI attempted to use approximately $631,500 of the funds to support his personal business interests. Among other things, ZACHARY SMULSKI circulated a business plan for a startup company called "Foundation Health" which claimed the company had raised $631,500 in advance funding. The business plan further indicated that Marquette was an investor in the company. In truth and fact, neither Soundpath nor Marquette had invested any money in Foundation Health.

15. ZACHARY SMULSKI retained control of the $631,500 until questions about the Marquette sale-leaseback arrangement were raised during an audit. In April of 2012, Soundpath's controller confronted ZACHARY SMULSKI about missing paperwork regarding the leaseback arrangement. Shortly afterwards, ZACHARY SMULSKI produced the missing paperwork and returned the $631,500 to Soundpath.

E. **Execution of the Scheme to Defraud**

16. On or about the below-listed dates, at Federal Way, within the Western District of Washington and elsewhere, ZACHARY SMULSKI, for the purpose of

executing the aforementioned scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, promises and omissions of material facts, and attempting to do so, did knowingly and intentionally cause to be transmitted, in interstate commerce by means of a wire communication, certain signs, signals, and sounds, as described below, each transmission of which constitutes a separate count of this Indictment.

| Count | Date | Wire |
|---|---|---|
| 1 | 9/22/2011 | Email from ZACHARY SMULSKI in the Western District of Washington to Utah directing Marquette to transfer funds to Trucaris' Bank of America Account *5204. |
| 2 | 9/23/2011 | Request for ACH transfer of $1,394,235 from Marquette's Wells Fargo account in Utah to Trucaris' Bank of America Account *5204 in the Western District of Washington. |
| 3 | 9/23/2011 | Request for ACH transfer of $311,289.09 from Marquette's Wells Fargo account in Utah to Trucaris' Bank of America Account *5204 in the Western District of Washington. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 4-5

### (Money Laundering)

17. The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 16 of this Indictment.

18. On or about the dates set forth below, at Tacoma, and elsewhere, within the Western District of Washington, ZACHARY SMULSKI did knowingly engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally-derived property of a value greater than $10,000, that is the following deposits, withdrawals, transfers, and exchanges of United States currency, funds, and monetary instruments in the following amounts, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Section 1343, each transaction of which constitutes a separate count of this Indictment:

//

//

//

| Count | Date | Transaction |
|---|---|---|
| 4 | 4/17/2012 | Issuance of $610,000 check drawn on Trucaris' Merrill Lynch account *2267 made payable to Trucaris. |
| 5 | 4/18/2012 | Issuance of $631,500 check drawn on Trucaris Inc.'s Bank of America account *5204 made payable to Soundpath Health. |

All in violation of Title 18, United States Code, Section 1957.

A TRUE BILL:

DATED: *Sept 1, 2016*

*Signature of Foreperson Redacted Per Policy of Judicial Conference*

_____
FOREPERSON

_____
ANNETTE L. HAYES
United States Attorney

_____
ANDREW FRIEDMAN
Assistant United States Attorney

_____
FRANCIS FRANZE-NAKAMURA
Assistant United States Attorney